**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

EILEEN D. ORTIZ,

          Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

          Defendant.

No. 16-CV-2002-CJW

**MEMORANDUM OPINION AND
ORDER**

_____

### *TABLE OF CONTENTS*

I. INTRODUCTION ............................................................................... 2

II. BACKGROUND ............................................................................... 2

III.   DISABILITY DETERMINATOINS AND THE BURDEN OF
     PROOF............................................................................................ 3

IV. THE ALJ'S FINDINGS ..................................................................... 6

V. DISCUSSION ................................................................................... 7
    A.    The Substantial Evidence Standard ............................................ 8
    B.    Whether Substantial Evidence Supports the ALJ's Residual
        Functional Capacity Assessment ................................................. 9
        1.    Evidence of Claimant's Mental Impairments and
            Work Limitations ..................................................... 12
        2.    Evidence of Claimant's Physical Impairments and
            Work Limitations ..................................................... 15
    C.    Whether Substantial Evidence Supports the ALJ's
        Credibility Determination ......................................................... 17

VI. CONCLUSION ................................................................................. 23

## I.  INTRODUCTION

Plaintiff, Eileen D. Oritz (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et. seq*.  Claimant alleged she was disabled because of diabetes, arthritis, high blood pressure, and chronic back pain.  Although the Administrative Law Judge (ALJ) found claimant had severe impairments consisting of degenerative disc disease, arthritis of the right knee, obesity, schizoaffective disorder with depression and psychotic ideation, anxiety and elements of a post-traumatic stress disorder, and personality disorder, he found claimant had the residual functional capacity to perform sedentary work with certain exertional and non-exertional limitations.  The ALJ found claimant could not perform past relevant work, but found a significant number of jobs exist in the national economy that claimant could perform.  Therefore, the ALJ found claimant was not disabled.  Claimant contends the ALJ erred when he improperly: (1) weighed the opinion of the only examining physician; and (2) discounted claimant's credibility.

For the reasons that follow, the Court affirms the Commissioner's decision.


## II.  BACKGROUND

Ms. Ortiz was born in 1968; at the time claimant alleged she became disabled, she was 42 years old.  AR 33, 205.[1]  At the time of the ALJ's decision, claimant was 45 years old.  AR 30, 99.  Claimant completed eleven years of schooling and did not attend special education.  AR 243.  Claimant had past relevant work experience as a food processor and meat processor.  AR 90.

---

[1] "AR" refers to the Administrative Record below.

The Commissioner denied claimant's application initially and upon reconsideration. AR 136-39, 146-50. Claimant then requested a hearing before an ALJ. On April 9, 2014, ALJ Eric S. Basse conducted a hearing at which claimant and a vocational expert testified. AR 50-96. On June 6, 2014, the ALJ issued a decision denying claimant's claim. AR 33-44.

On November 5, 2015, the Appeals Council denied claimant's request for review. AR 1-5. The ALJ's decision stands as the final decision of the Commissioner. 20 C.F.R. § 416.1481.

On January 5, 2016, claimant filed a complaint in this Court seeking review of the Commissioner's decision. Doc. 3. The parties briefed the issues (Docs. 13 & 14) and on July 26, 2016, this case was deemed ready for decision (Doc. 15). On August 29, 2016, with the consent of the parties, United States District Court Chief Judge Linda R. Reade transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. Doc. 16.

## III. DISABILITY DETERMINATOINS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant

numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks and citation omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's ability to meet the physical, mental, sensory, and other requirements of the claimant's past relevant work. "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks and citation omitted). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in step four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do given the claimant's RFC and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow

the claimant to make an adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV. THE ALJ'S FINDINGS

The ALJ engaged in the five-step sequential analysis outlined above, as reflected in his written decision.

At step one, the ALJ found claimant was not gainfully employed and had not engaged in substantial gainful activity since April 6, 2012. AR 35.

At step two, the ALJ determined claimant had the following severe impairments: degenerative disc disease; arthritis of the right knee; obesity; schizoaffective disorder with depression and psychotic ideation; anxiety and elements of a post-traumatic stress disorder; and personality disorder. AR 35-36. The ALJ did not find that other conditions including diabetes mellitus, hypertension, and migraine headaches, were severe. *Id*.

At step three, the ALJ determined claimant did not have an impairment or a combination of impairments which met or medically equaled the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. AR 36-37.

At step four, the ALJ determined claimant's RFC. The ALJ found that claimant had the residual functional capacity to perform sedentary work with the following exertional and non-exertional limitations:

> [T]he claimant [ ] may only occasionally balance, kneel, stoop, crouch, or climb ramps and stairs. However, she cannot crawl or climb ladders, ropes, or scaffolds. In addition, she must avoid concentrated exposure to cold and even moderate exposure to hazards, such as dangerous machinery or unprotected heights. The claimant is also limited to jobs with a specific vocational preparation (SVP) level of one (1) or two (2), involving simple, routine tasks. She must also not be required to interact with the public to accomplish her job tasks, and she may have no more than occasional interaction with coworkers or supervisors. However, she cannot be expected to work as a team with these individuals. Instead, her work should be solitary in nature.

AR 37. The ALJ found claimant was unable to perform any past relevant work. AR 42.

At step five, the ALJ determined a significant number of jobs exist in the national economy that claimant could perform such as an addresser, weight tester, and document preparer. AR 42-43. Therefore, the ALJ found claimant was not disabled. AR 43-44.

## V.  DISCUSSION

Claimant argues the ALJ's decision was flawed for two reasons:

1. Claimant argues substantial evidence does not support the ALJ's residual functional capacity assessment because the administrative record does not contain specific work-related opinions from a treating or examining source and, therefore, the ALJ should have further developed the record. Doc. 13, at 3-9.

2. Claimant argues substantial evidence does not support the ALJ's credibility determination because he improperly applied the *Polaski* standard in evaluating claimant's subjective allegations. Doc. 13, at 10-17.

The Court will address these arguments separately below.

### A. The Substantial Evidence Standard

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (internal citation omitted); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (internal quotation marks and citations omitted). The Eighth Circuit explains the standard as "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation marks and citations omitted).

In determining whether the Commissioner's decision meets this standard, a court considers "all of the evidence that was before the ALJ, but [it does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). A court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). A court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, a court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health &*

*Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989) (internal citation omitted). A court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, a court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [a court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch*, 547 F.3d at 935). This is true even in cases where a court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). Courts may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (internal citation omitted) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### B. Whether Substantial Evidence Supports the ALJ's Residual Functional Capacity Assessment

Claimant argues the ALJ erred in determining her RFC because "[t]he Administrative Record does not contain specific work-related opinions from a treating or examining source, either physical or mental." Doc. 13, at 4. Claimant argues, therefore, that the ALJ "should have developed the record and obtained that evidence." *Id*. Claimant argues consultative psychologist, Dr. Carroll Roland, provided the "only work-related limitations from a treating or examining source." *Id*. Claimant argues that Dr.

Roland's opinions cannot constitute substantial evidence, and therefore, the Court should remand the case and order the ALJ to further develop the record. *Id.* at 4-9.[2]

The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). "It is an ALJ's responsibility to determine claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (internal citation omitted). Claimant, though, has the burden of establishing the RFC. *See Eichelberger*, 390 F.3d at 591; *Goff*, 421 F.3d at 790. This Court will uphold the ALJ's RFC determination if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

An ALJ must consider all relevant medical and other evidence in the record to determine a claimant's RFC. 20 C.F.R. § 416.945(a)(1). Although the RFC determination draws from medical sources, the RFC is ultimately an administrative decision reserved to the Commissioner. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). An ALJ may use physician observations, medical records, and the claimant's subjective statements about her capabilities to support the ALJ's RFC finding. *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011).

An ALJ has a duty to fully and fairly develop the record, even when the claimant is represented by counsel. *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citing *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983)). "Because the social security

---

[2] Claimant's argument that there was no examining source paints her argument with too wide a brush because there was an examining source with regard to claimant's mental impairments. Dr. Roland was an examining source with regard to claimant's mental impairments but not physical impairments; as a psychologist, Dr. Roland was not qualified to render an opinion as to claimant's physical impairments.

disability hearing is non-adversarial . . . the ALJ's duty to develop the record exists independent of the claimant's burden in the case." *Stormo*, 377 F.3d at 806 (citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). Reversal is required, however, only where a claimant can demonstrate prejudice from that failure to develop the record. *Haley v. Massanari*, 258 F.3d 742, 750 (8th Cir. 2001).

Where, as here, the ALJ finds that a claimant is unable to perform any past relevant work, the burden shifts to the Commissioner in step five to show that there is other work that the claimant can do given the claimant's RFC and her age, education, and work experience. *Bladow*, 205 F.3d at 358 n.5. As a general rule, the Commissioner typically cannot make such a showing without opinion evidence from a treating or examining source. *Nevland*, 204 F.3d at 858. In *Nevland*, the Eighth Circuit Court of Appeals stated:

> In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id*. In our opinion, the ALJ should have sought such an opinion from Nevland's treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional capacity.

*Nevland*, 204 F.3d at 858 (emphasis in original).

It is clear, however, that *Nevland* "'does not compel remand in every case in which the administrative record lacks a treating doctor's opinion.'" *Mann v. Colvin*, 100 F.

Supp. 3d 710, 722 (N.D. Iowa 2015) (quoting *Hattig v. Colvin*, No. C12–4092 MWB, 2013 WL 6511866, at *10 (N.D. Iowa Dec. 12, 2013)). A court may affirm an ALJ's decision, even absent an opinion from a treating or examining source, if there is other medical evidence demonstrating the claimant's ability to function in the workplace. *Mann*, 100 F. Supp. 3d at 722; *see also Sneller v. Colvin*, No. 12-CV-4113-MWB, 2014 WL 855618, at *9 (N.D. Iowa Mar. 5, 2014) (unpublished) (holding that substantial evidence supported the ALJ's finding because there was medical evidence from a treating source); *Agan v. Astrue*, 922 F. Supp. 2d 730, 755 (N.D. Iowa 2013) (holding substantial evidence supported the ALJ's finding where the ALJ relied upon "medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (internal quotation marks and citation omitted). The question before the Court, therefore, is whether there is sufficient evidence of "how [claimant's] impairments … affect [her] residual functional capacity to do other work," or her "ability to function in the workplace." *Hattig*, 2013 WL 6511866, at *11 (quoting *Nevland*, 204 F.3d at 858).

In this case, the ALJ relied upon sufficient medical evidence, including treatment records, to assess how claimant's impairments affected her residual functional capacity to perform other work. The ALJ considered medical evidence relating to both claimant's mental impairments and her physical impairments. Substantial evidence in the record as a whole support the ALJ's RFC assessment, despite the absence of a work limitation opinion by a treating or examining physician.

### 1. *Evidence of Claimant's Mental Impairments and Work Limitations*

The ALJ found claimant had a mental RFC to perform jobs involving simple and routine tasks without interaction with the public and only occasional interaction with co-workers and supervisors. AR 37. The ALJ also concluded claimant could not work in

a team, but, rather, should work alone. *Id*. In reaching this conclusion, the ALJ relied on the opinion of consulting psychologist, Dr. Roland, and that of state agency psychologist, Dr. Russell Lark, treatment records, and claimant's own statements and claims.

Dr. Roland opined that claimant would have difficulty maintaining full employment due to a combination of chronic pain, migraine headaches, physical limitations, and significant depression. AR 522. The ALJ properly gave this opinion little weight for several reasons. First, the ALJ concluded Dr. Roland's opinion was largely based on claimant's subjective complaints. AR 41. Dr. Roland's report explicitly notes as much. AR 517, 522. For the reasons stated in the next section, there was substantial evidence in the record for the ALJ to find claimant was not a credible source. Second, the ALJ discounted Dr. Roland's opinion to the extent it related to claimant's physical impairments because Dr. Roland is a psychologist, not a medical doctor. AR 41. Finally, the ALJ could properly discount Dr. Roland's opinion about claimant's ability to maintain full employment because that is not a medical conclusion; it is an RFC conclusion reserved to the Commissioner. *See Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (holding that an ALJ need not afford weight to a physician's opinion about whether a claimant was able to return to work). In reviewing Dr. Roland's other findings during the examination, however, the ALJ noted that claimant was mentally capable of simple, routine work with little contact with others. AR 40. Claimant's performance on a memory test demonstrated her ability to remember two and three-step instructions. AR 520. Dr. Roland opined this was sufficient memory and intellect for employment. AR 522. Claimant was cooperative, had appropriate concentration, and maintained normal eye contact during the evaluation. AR 520. Claimant claimed she heard a phone ringing at times, but otherwise had no indications of paranoia, delusions,

or hallucinations. *Id.* Dr. Roland found claimant's thought process otherwise unremarkable. *Id.*

The ALJ gave great weight to the opinion of Dr. Lark, the state agency psychologist. AR 42. Dr. Lark opined that claimant's "attention, concentration, and pace may vary . . . but are adequate for tasks not requiring sustained attention." AR 127. Dr. Lark concluded claimant "is able to complete at least simple, repetitive tasks on a sustained basis." *Id.* An ALJ may properly rely on a non-examining source when the ALJ has otherwise reviewed the record as a whole. *See Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007) ("ALJ did not err in considering the opinion of [the state agency medical consultant] along with the medical evidence as a whole."); *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 978 (8th Cir. 2003) ("The determination by a physician from such a state agency is to be treated by an ALJ as 'expert opinion evidence' and given 'appropriate weight.'") (internal citation omitted). Although additional evidence became available after Dr. Lark arrived at his opinion, there is nothing in this additional evidence that would materially detract from the ALJ's reliance on the opinion.[3]

The ALJ also relied upon claimant's treatment records. AR 41. In January 23, 2013, a treatment provider administered a depression screening, which did not suggest depression, and during the examination, the doctor noted claimant had intact judgment and insight and no depression, anxiety, or agitation. AR 580, 591. In June 2013, a mental health nurse practitioner noted claimant was well-groomed, had good eye contact, normal speech, thought process and associations, fair judgment and insight, and variable and congruent affect. AR 626. In July 2013, a nurse practitioner found claimant had

---

[3] The ALJ was aware of and considered this new evidence—that claimant often denied depression and anxiety, did not establish psychiatric care until March 2013, and had gaps in her treatment. AR 41.

intact judgment and insight, and no depression, anxiety, or agitation. AR 575. Claimant reported that Seroquel helped claimant's depression and her reported sensation of bugs crawling on her and seeing shadows, but she was inconsistent in taking the medication. AR 566, 613, 621. Claimant was part of a prescription assistance program, so had access to the medication. If medication can control an impairment, then it is not disabling. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). In January 2014, claimant denied depression and anxiety. AR 566. In February 2014, a treatment provider found claimant had no depression, anxiety, or agitation, and her judgment and insight were intact. AR 547.

In summary, substantial evidence existed in the record as a whole for the ALJ to determine claimant's mental impairments would not prevent her from working simple, routine tasks with little or no interaction with the public, co-workers, and supervisors. With regard to claimant's mental impairments, the ALJ relied, in part, on an examining consulting psychologist, but also relied on a state agency reviewing psychologist, and treatment records, to arrive at his assessment. In this case, the ALJ's conclusion fell within his permissible zone of choice.

### 2. *Evidence of Claimant's Physical Impairments and Work Limitations*

The ALJ found claimant had the residual functional capacity to perform sedentary work with certain exertional limitations. AR 37. In arriving at these limitations, the ALJ found the state agency medical consultant did not adequately consider the effect of claimant's obesity on claimant's ability to stand for prolonged periods of time on her arthritic right knee, and imposed greater limitations on her physical capabilities. AR 42. Although the ALJ did not have the benefit of an opinion from a treating or examining source regarding claimant's physical limitations, the ALJ did rely upon evidence in the form of treatment and examining medical records to support the RFC regarding

15

claimant's physical impairments. A review of those records establishes there is substantial evidence in the record as a whole to support the ALJ's conclusions.

In general, the medical records show claimant to have an arthritic right knee and some lower back pain, both of which conditions are aggravated by her obesity. But, the records show she is ambulatory, and the records certainly do not contradict the ALJ's conclusion that she can perform sedentary work. For example, medical records throughout the time period of 2011 to 2014 reflect observations that claimant had a normal gait. AR 503, 520, 547, 556, 575, 580. They also reflect that she reported walking often. AR 428 (stating claimant walks frequently, but omits any reference or mention of any assistive devices), 502 (same). Claimant first asked for a walker or cane in February 2014, two months before her disability hearing, telling the doctor that she often fell. AR 536. Based on these subjective statements, the doctor directed claimant to a social worker to obtain some type of assistive device, but there is no evidence in the record that it was medically necessary or prescribed. *Id.* Although she had an arthritic right knee, examiners repeatedly found it to have a full range of motion. AR 420, 428, 568. X-rays of that knee showed only moderate narrowing of the joint. AR 457, 543. Although she complained of lower back pain, she did not follow through with stretching exercises. AR 428.

Claimant takes issue with these findings, instead summarizing a series of medical visits where claimant complained of back and knee pain, but also chest pain, hand-tingling, and numbness. Doc. 13, at 8-9. These medical records, though, only reflect claimant's subjective description of her symptoms and limitations, which the ALJ found "not entirely credible." AR 38. Although claimant argues the ALJ "failed to explain how he determined [claimant] was able to perform sedentary work and was not disabled" (Doc. 13, at 8), claimant has not pointed to any medical evidence that would support an

opposite conclusion.[4]  Claimant, it must be remembered, bears the burden of proving her RFC.  *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 1994).  Indeed, the ALJ's limitation of claimant to sedentary work appropriately accounts for her severe impairments of degenerative disc disease and arthritis of her right knee.

In sum, substantial evidence in the record as a whole support the ALJ's RFC assessment and his finding that claimant was not disabled.  It is not for this Court, on review, to substitute its assessment of the medical evidence for the ALJ's assessment. *Fastner v. Barnhart*, 324 F.3d 981, 983 (8th Cir. 2003) ("We may not substitute our judgment for that of the ALJ.").

### C. Whether Substantial Evidence Supports the ALJ's Credibility Determination

Claimant argues "the ALJ failed to identify inconsistencies" in claimant's subjective complaints, and therefore, his credibility determination is unsupported by substantial evidence.  Doc. 13, at 17.  In determining a claimant's RFC, the ALJ must consider, *inter alia*, the claimant's own descriptions of her limitations.  *Pearsall*, 274 F.3d at 1217.  Consequently, the ALJ must evaluate the claimant's credibility.  *Id*. at 1218.  *See also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (noting that the ALJ had to assess claimant's credibility before determining his RFC).

"[W]hen evaluating a claimant's credibility, in addition to considering the absence of objective medical evidence to support complaints of pain, an ALJ should consider a claimant's reported daily activities, the duration, frequency and intensity of his or her

---

[4] In the section of her brief devoted to the credibility issue, claimant references a single observation by a Social Security Administration worker who noted "an extremely slow gait as she attempted to walk." Doc. 13, at 15 (citing AR 236).  This is not, however, an observation by a medical source.

pain, precipitating and aggravating factors, medication, and functional restrictions." *Steed v. Astrue*, 524 F.3d 872, 875 n. 4 (8th Cir. 2008) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)); *see* 20 C.F.R. § 404.1529(c)(3). "The ALJ was not required to discuss methodically each *Polaski* consideration, so long as [the ALJ] acknowledged and examined those considerations before discounting [the claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000). "It is sufficient if [the ALJ] acknowledges and considers those factors before discounting a claimant's subjective complaints." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) (internal citation omitted). *Accord Goff*, 421 F.3d at 791-92. In the written decision, an ALJ must make express credibility determinations detailing reasons for discounting a claimant's subjective complaints of pain. *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010).

A reviewing court cannot substitute its own credibility judgment for that of the ALJ's. An ALJ's credibility determination is entitled to deference because the ALJ is in a better position than a reviewing court to gauge credibility. *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007). "'Where adequately explained and supported, credibility findings are for the ALJ to make.'" *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005) (quoting *Lowe*, 226 F.3d at 972). "We 'will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain.'" *Goff*, 421 F.3d at 792 (quoting *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001)).

In this case, the ALJ considered claimant's subjective complaints and found her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely credible." AR 38. In assessing claimant's credibility, the ALJ specifically referenced the *Polaski* decision, and acknowledged the *Polaski* factors. *Id.*

The Court finds that substantial evidence in the record as a whole supports the ALJ's credibility finding.

With regard to claimant's mental impairments, the ALJ noted that claimant received some mental health treatment, but at the same time, often denied suffering from depression and anxiety. AR 41, 556, 561, 575, 580, 591. It is true that claimant's denial of mental health symptoms were made to primary care providers and not to mental health personnel, but it is not unreasonable for an ALJ to believe that claimant would have alleged these symptoms when asked about them by medical providers, which she did on occasion. AR 496, 502. Moreover, on occasion when claimant endorsed depression symptoms, treatment sources did not find evidence of depression. AR 546-47. It was proper for the ALJ to rely on these inconsistencies in assessing claimant's credibility. *Raney v. Barnhart*, 396 F.3d 1007, 1010-11 (8th Cir. 2005) (holding that the ALJ properly considered inconsistencies between claimant's statements made to medical providers in assessing credibility).

Other evidence in the record further supports the ALJ's credibility finding with regard to claimant's mental impairments. For example, a function report claimant filled out in 2009, when applying for disability benefits indicated she got along with authority figures, and had a "good" ability to handle stress. AR 252. When she reapplied for benefits in 2012, however, claimant reported she had problems with both authority figures and stress. AR 310. Claimant's non-compliance with prescribed mental health medication (AR 613) also weighs against the credibility of her subjective mental health complaints. *See Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009) (holding the ALJ properly could discount the claimant's credibility where the claimant failed to take medications as prescribed). In 2013, claimant told a nurse at a mental health clinic that she had twice been denied disability benefits and wanted to work, but

said her back pain made it difficult. AR 616. Claimant's failure to state that her mental impairments limited her ability to work is a proper basis upon which an ALJ could discount claimant's credibility. *See Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (affirming adverse credibility determination based in part on inconsistency between claimant's assertion that she had problems concentrating because of pain medication when she never complained to her doctors of the side effect).

Regarding claimant's physical impairments, the ALJ noted that claimant alleged she suffered from diabetes and hypertension, but a review of the medical records showed that claimant's doctors found she did not. AR 39. Similarly, the ALJ found that, although claimant complained of migraine headaches, he found no medical evidence that claimant was ever treated for that malady since the application date. *Id*. Claimant does not address or contest either of these credibility findings.

The ALJ then turned to evaluate claimant's subjective complaints regarding her arthritis and degenerative disc disease, impairments for which he found supporting medical evidence. The ALJ noted that X-rays showed only mild to moderate disease processes without any indication of nerve compromise. AR 39. Claimant alleges the ALJ's analysis of the X-ray evidence is flawed, but points only to additional X-rays not specifically cited by the ALJ that similarly reflect only mild to moderate results. Doc. 13, at 13-14. The ALJ further noted that claimant's statements to treating sources about the extent of her walking, and regular findings that claimant's gait was normal, were inconsistent with the severity of impairment she claimed from her physical ailments. AR 40. Claimant again takes issue with these observations, noting that there is no indication of how long it took claimant to walk various distances and some of the observations of her gait were made when claimant was seeking mental health care. Doc. 13, at 15. Claimant also notes that the ALJ did not mention the one observation by a Social Security

Administration employee that claimant had a labored gait. *Id.* Although these arguments could detract from the strength of the ALJ's credibility determination, it is not for this Court to weigh claimant's credibility and substitute its own judgment for that of the ALJ. Indeed, as the Commissioner points out, claimant's alleged extremely slow gait while at a Social Security Administration office applying for disability benefits, in contrast to her apparently normal gait while seen by medical providers, could equally detract from her credibility. Doc. 14, at 19. So long as there is substantial evidence to support the ALJ's credibility assessment, it will not be disturbed on review on the ground that there is also evidence supporting a different conclusion. *See Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012) ("'If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.'") (quoting *Travis*, 477 F.3d at 1040).

The ALJ also noted that claimant stood for limited periods of time when she worked at the Salvation Army during a holiday season, which the ALJ found inconsistent with the degree of pain claimant alleged. AR 40. Claimant takes issue with this finding, alleging, "[t]he ALJ ignored the fact that [claimant] worked only a few hours a month and, even then, had difficulty performing the work." Doc. 13, at 15. Claimant is simply wrong because the ALJ explicitly discussed the limited hours and season of her employment. AR 40. Claimant further argues that her limited work at the Salvation Army does not show she could perform that work 40 hours a week, week after week. Doc. 13, at 16. This argument, however, is one relevant to the determination of an RFC assessment; here, the ALJ referenced her prior work not as evidence to determine her RFC, but as evidence that the extent of her subjective complaints were inconsistent with her past work history. This was proper. *See Anderson v. Astrue*, 696 F.3d 790, 794

(8th Cir. 2012) (holding that an ALJ can rely on activities inconsistent with claimed limitations in assessing credibility).

In determining that claimant was not entirely credible regarding the extent and severity of her physical impairments and limitations, the ALJ also noted claimant's limited, conservative treatment for her back and knee and her failure to follow through with prescribed treatment and recommendations. AR 40. Claimant criticizes these findings, arguing that the ALJ failed to note her financial inability to pay for treatment. Doc. 13, at 16-17. There is, however, no evidence claimant was denied treatment because of lack of funds. Rather, the evidence shows claimant received treatment from low-cost community clinics and she participated in a prescription assistance program. AR 625. It is not enough for claimant to assert her poverty; there must be a connection between her failure to pursue treatment and follow prescriptions and recommendations. Otherwise, it is not improper for the ALJ to consider claimant's failures to comply with her treatment and medication to assess the credibility of her subjective complaints.

Finally, claimant faults the ALJ for failing to adequately consider the effect of her obesity on her physical ailments. Doc. 13, at 14-15. The ALJ did not fail to consider claimant's obesity. In fact, the ALJ found claimant's obesity was a severe impairment. AR 35. He also concluded it contributed to her back and knee pain and took it into account in his RFC assessment. AR 41. Indeed, the ALJ found the state agency medical consultants failed to properly account for claimant's obesity, and, for that reason, found a greater limitation to sedentary work was appropriate. AR 42. This case is distinguishable from *Norris v. Astrue*, 776 F. Supp. 2d 616 (N.D. Ill. 2011) and *Martinez v. Astrue*, 630 F.3d 693 (7th Cir. 2011), which claimant cites in support of her argument. In *Norris*, the court found the ALJ erred because other than noting medical records which noted the claimant's weight and body mass index, "nowhere in [the ALJ's] decision did

she address the effect of plaintiff's obesity in combination with her other impairments."
*Norris*, 776 F. Supp. 2d at 639. Similarly, in *Martinez,* the ALJ did not analyze the claimant's obesity in relation to her other impairments, and further rejected the opinion of the claimant's treating physician regarding the impact of the claimant's obesity on her knee impairment. *Martinez*, 630 F.3d at 698-99. In this case, in contrast, the ALJ explicitly considered the impact of claimant's obesity in connection with her arthritic knee.

Accordingly, the Court finds substantial evidence in the record as a whole supports the ALJ's credibility assessment of claimant's subjective complaints.

## VI. CONCLUSION

For the reasons set forth herein, the Court **affirms** the Commissioner's determination that claimant was not disabled. Judgment shall be entered against claimant and in favor of the Commissioner.

**IT IS SO ORDERED** this 8th day of March, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa